UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MELISSA LIND SCOTT,                          No. 2:09-cv-01238-MCE-KJN

       Plaintiff,

    v.                                      <u>MEMORANDUM AND ORDER</u>

WINCO FOODS, INC., dba WINCO
FOODS, and DOES 1-100, and
Each of them, Inclusive,

       Defendants.

----oo0oo----

    Plaintiff Melissa Lind Scott ("Plaintiff") seeks damages in
connection with the decision of Defendant WinCo Foods, Inc.
("Defendant") to terminate her employment.  Plaintiff alleges
that Defendant subjected her to discrimination, harassment, and
retaliation after she informed Defendant that she was pregnant
and intended to take maternity leave.

///

///

///

///

1

1   Defendant has moved for Summary Judgment (ECF No. 14),[1] arguing
2   that Plaintiff was not terminated because she was pregnant, but
3   because she lied to her supervisors in violation of the company's
4   honesty policy.  For the reasons set below, Defendant's Motion is
5   denied.[2]

6

7                              **BACKGROUND**

8

9        At all times relevant to this litigation, Defendant operated
10  a grocery store in Antelope, California where Plaintiff was hired
11  as a part-time all-purpose clerk in 2001.  (Pl.'s Dep. 18:6-17,
12  51:12.)  Initially, Plaintiff worked primarily as a cashier on
13  the evening shift.  (Id. 46:17-25, 50:19-21, 64:18-21.)  She was
14  subsequently reassigned to work primarily as a stock clerk.  (Id.
15  54:19-21.)  On October 7, 2004, Defendant granted Plaintiff full-
16  time status based on her length of service and positive job
17  performance reviews.  (Goldman Decl. Ex. F-2 at D00096.)
18       Plaintiff worked primarily as a stock clerk for
19  approximately five years.  (Pl.'s Dep. 47:18-19.)  During that
20  time, Plaintiff had a consistent day schedule that allowed her to
21  take care of her two young children.  (Id. 64:18-21, 180:10-25.)
22  ///

23  _____

24       [1] On February 7, 2011, the Court ordered both parties to
    file simultaneous briefing on the basis for subject matter
25  jurisdiction.  After review of the briefs, the Court determines
    that subject matter jurisdiction is proper based on complete
26  diversity pursuant to 28 U.S.C. § 1332.

27       [2] Because oral argument will not be of material assistance,
    the Court orders this matter submitted on the briefs.  E.D. Cal.
28  Local Rule 230(g).

In December 2007, Plaintiff notified Defendant that she was pregnant. (Id. 153:5-14.)  In late 2007 or early 2008, Plaintiff notified Defendant that she would be taking three months maternity leave pursuant to the California Family Rights Act ("CFRA"). (Id. 175:17-176:18.)  In response to Plaintiff giving notice of her intention to take maternity leave, a manager at Defendant's Antelope Store alluded to the fact that most people did not return from maternity leave. (Id. 153:20-154:11.) Plaintiff also claims that, after she notified Defendant of her pregnancy, she was treated differently by many of her coworkers who had previously been much more congenial. (Id. 178:8-12.)

On or around March 2008, Defendant reassigned Plaintiff to cashier duty. (Id. 160:4-64:5.)  As a cashier, Plaintiff was required to stand in one place for prolonged periods of time which her pregnancy made difficult. (Compl. ¶ 17.)  Defendant also altered Plaintiff's work schedule whereby she was required to work some evenings, sometimes as late as 11:00 p.m. (Pl.'s Dep. 183:18-24.)  Such a schedule was physically taxing on Plaintiff, and made it increasingly difficult to care for her young children. (Id. 201:12-202:24.)  Defendant told Plaintiff the reason for the change in work assignment and schedule was that she had become "stale in her job" and needed to put a "little more spring in [her] step." (Id. 162:19-20, 163:19-20.) Plaintiff admits that she had slowed as a result of the pregnancy, but contends that she was still a competent, even above average, employee during her pregnancy. (Pl.'s Decl. ¶¶ 26-32.)

///

Plaintiff inquired about an open position in customer service that would be less demanding during her pregnancy, but she was not awarded the position. (Pl.'s Dep. 158:15-159:17.) Although Plaintiff's work assignment and schedule changed, Defendant did not alter her title or salary. (See Compl.)

On May 5, 2008, Plaintiff made a mistake while operating a cash register. (See Pl.'s Dep. 77:16-82.) Defendant's cash registers can be switched between two different sides, allowing cashiers to ring up two customers at essentially the same time. (Pl.'s Decl. ¶ 45.) At approximately 11:00 a.m., Plaintiff began ringing up a customer on the "A" side of the register. (Pl.'s Dep. 77:16-25.) In the middle of the transaction, Plaintiff switched to the "B" side to add cash to the register. (Pl.'s Decl. ¶ 50.) After adding the cash, Plaintiff forgot to switch back to the "A" side and continued ringing up the customer. (Id.) As a result, the customer's items were split on both sides of the register. (Id.) Not realizing the mistake, Plaintiff only charged the customer for the items on the "B" side. (Id.) The customer left without paying for the items on the "A" side of the register. (Id. ¶ 52.)

After helping several other people in line, Plaintiff noticed several items on the "A" side of the register. (Id. ¶¶ 57-58.) At that point, she began voiding items from the register. (Id. ¶ 59.) As a result of the voids, the register required a manager override. (See Id. ¶ 60.) After Plaintiff called him over, the floor manager noticed the voided items and asked what had happened. (Id.)

///

4

Plaintiff contends that she told the manager that she must have split an order, and that she wasn't sure exactly what had happened. (Id. ¶ 65.) The floor manager contends that Plaintiff stated the items were scanned in again on the other side of the register and had been paid for. (Id. ¶ 65) Defendant subsequently terminated Plaintiff. (Pl.'s Dep. 65:14-21.) The sole grounds for termination put forward by Defendant was dishonesty in connection with Plaintiff's alleged statement that the items had been paid for. (Id.) Defendant contends that if Plaintiff had been truthful about her mistake, the incident would have been treated as a walk-out and Plaintiff likely would have received a warning. (Stinger Decl. ¶ 7.)

**STANDARD**

The Federal Rules of Civil Procedure[3] provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

///

///

---

[3] Unless otherwise noted, all further references to Rule or Rules are to the Federal Rules of Civil Procedure.

5

1    In considering a motion for summary judgment, the court must
2  examine all the evidence in the light most favorable to the non-
3  moving party.  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).
4  Once the moving party meets the requirements of Rule 56
5  by showing that there is an absence of evidence to support the
6  non-moving party's case, the burden shifts to the party resisting
7  the motion, who "must set forth specific facts showing that there
8  is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc.,
9  477 U.S. 242, 256 (1986).  Genuine factual issues must exist that
10  "can be resolved only by a finder of fact, because they may
11  reasonably be resolved in favor of either party."  Id. at 250.
12  In judging evidence at the summary judgment stage, the court does
13  not make credibility determinations or weigh conflicting
14  evidence.  See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809
15  F.2d 626, 630-631 (9th Cir. 1987) (citing Matsushita Elec. Indus.
16  Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

17
18                           **ANALYSIS**
19    **A.    Discrimination**
20
21    California has adopted a burden-shifting test in
22  discrimination claims pursuant to FEHA.  Guz v. Bechtel Nat.
23  Inc., 24 Cal. 4th 317, 354 (Cal. 2000).  The plaintiff has the
24  initial burden of establishing a prima facie case of
25  discrimination by establishing: (1) she was a member of a
26  protected class; (2) she was performing competently in her
27  position; (3) she suffered an adverse employment action; and
28  (4) some other circumstance suggests a discriminatory motive.

1  Id. at 355.  If the plaintiff establishes a prima facie case, a
2  rebuttable presumption of the defendant's discriminatory motive
3  for the adverse employment action is created.  Id.

4      The burden then shifts to the defendant to produce
5  admissible evidence sufficient to raise a genuine issue of
6  material fact that the action was taken for a nondiscriminatory
7  reason.  Id. at 355-356.  If the defendant establishes a
8  nondiscriminatory reason, then the presumption of discrimination
9  is eliminated, and the plaintiff then bears the burden to show
10 that the nondiscriminatory reason is pretextual.  Id. at 356.
11 However, a plaintiff is not required to produce additional
12 evidence of pretext if the prima facie case raises a genuine
13 issue of material fact regarding the truthfulness of Defendant's
14 proffered nondiscriminatory reason.  Chuang v. University of Ca.
15 Davis, Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000).

16     In the instant case, Plaintiff has established a prima facie
17 case of discrimination sufficient to survive summary judgment.
18 It is undisputed that Plaintiff was a member of a protected
19 class.  The prohibition of sex discrimination in FEHA encompasses
20 gender discrimination and discrimination based on pregnancy.
21 Cal. Gov't Code § 1296(p).  It is further undisputed that
22 termination of employment is an adverse employment action.[4]  See
23 Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1054 (Cal.
24 2005).
25 ///
26

27   [4] Because it is undisputed that termination is an adverse
   employment action, it is unnecessary at this juncture to
28 determine whether altering Plaintiff's work assignment and
   schedule constitutes an additional adverse employment action.

7

Defendant disputes only that Plaintiff was performing competently in her position, and that there are circumstances suggesting that Defendant harbored a discriminatory motive.

There is a triable issue of fact as to whether Plaintiff was performing competently in her position.  Defendant contends that Plaintiff's performance began to decline to unsatisfactory levels in the Summer of 2007, and she was eventually terminated for dishonesty. (<u>See</u> Stinger Decl. ¶ 8; Sparks Decl. ¶ 3.)  According to Plaintiff, while she had slowed slightly as a stock clerk during her pregnancy, she was still a competent productive employee.  (Pl.'s Decl. ¶¶ 26-32.)  Plaintiff also disputes that she was never dishonest.  (<u>Id.</u> ¶ 65.)  One of Defendant's former employees attests to Plaintiff's competence during her pregnancy. (<u>See</u> Lotze Decl. ¶ 25.)  At the summary judgment stage, the Court does not make credibility determinations or weigh competing evidence.  Because there is conflicting evidence concerning the issue, a genuine issue of material fact regarding Plaintiff's competence remains.

There are also other circumstances suggesting that Defendant harbored a discriminatory motive in terminating Plaintiff. Defendant changed Plaintiff's long-standing work assignment and schedule shortly after Plaintiff informed Defendant that she was pregnant and was planning to take maternity leave.  (Pl.'s Dep. 175:17-176:18.)  Further, Plaintiff contends that she was treated poorly by many of her coworkers after she notified Defendant of her pregnancy, and that a manager alluded to the fact that women do not typically return to work after taking maternity leave. (<u>Id.</u> 153:20-154:11.)

Given the timing of the conduct involved, and taking all evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact as to Defendant's alleged discriminatory motive.

Defendant has established a triable issue of fact regarding a nondiscriminatory reason for terminating Plaintiff. Defendant claims that Plaintiff's work assignment and schedule were changed because of poor performance as a stock clerk. Defendant further claims that Plaintiff was terminated for dishonesty. However, because Plaintiff has established sufficient evidence of her prima facie case and cast doubt on the truthfulness of Defendant's nondiscriminatory reasons, summary adjudication of Plaintiff's discrimination claim is not proper.[5]

**B.   Harassment**

Under FEHA, it is unlawful to harass an employee on the basis of sex. Cal. Gov't Code § 12940(j)(1). Harassment on the basis of sex includes harassment based on gender and pregnancy. Cal. Gov't Code § 12940(j)(4)(c).

///

///

///

---

[5] It should be noted that the California Unemployment Insurance Appeals Board determined that Plaintiff was not discharged for misconduct. Melissa Lind, Case No. 2456235 (Cal. Unemployment Ins. Appeals Bd. 2008). The Court makes no determination as to whether this affects Plaintiff's ability to demonstrate a triable issue of fact. See Cal. Unemp. Ins. Code § 1960.

9

1  Harassment may be established by evidence of unwelcome sexual

2  advances, conduct, or comments, that were sufficiently severe or

3  pervasive to alter the conditions of employment and create a

4  hostile or abusive work environment.  <u>Lyle v. Warner Brothers</u>

5  <u>Television Prod.</u>, 38 Cal. 4th 264, 283 (Cal. 2006).  To establish

6  harassment, a plaintiff must show that the defendant's conduct

7  was both objectively and subjectively offensive.  <u>Id.</u> at 284.

8  The conduct at issue must be more than "merely tinged with

9  offensive sexual connotations," it must constitute discrimination

10 because of gender.  <u>Id.</u> at 280 (internal quotations omitted).

11     Plaintiff has offered evidence that she subjectively

12 considered Defendant's conduct hostile and abusive.[6]  Further, as

13 detailed above, Plaintiff has established sufficient evidence of

14 gender discrimination to survive summary judgment.  Shortly

15 after Defendant received notice of Plaintiff's pregnancy and

16 intention to take maternity leave, Defendant altered her work

17 assignment and schedule.  (Pl.'s Dep. 175:17-176:18.)  Plaintiff

18 has offered evidence that Defendant altered the conditions of

19 Plaintiff's employment and subsequently terminated her for a

20 discriminatory purpose.  It follows that Plaintiff has

21 established sufficient evidence that the conduct at issue was

22 more than merely tinged with offensive sexual connotations.  As a

23 result, Plaintiff has established a triable issue of fact as to

24 whether she suffered harassment based on a hostile or abusive

25 work environment.

26

27     [6] Questions of Plaintiff's subjective, good faith belief
   "involve questions of credibility and ordinarily cannot be
   resolved on summary judgment."  <u>Miller v. Department of</u>
28 <u>Corrections</u>, 36 Cal. 4th 446, 472 (2005).

1    **c.    Retaliation**

2

3        To prove retaliation pursuant to the FEHA, a plaintiff must

4    establish that: (1) she engaged in protected activity; (2) the

5    defendant subjected her to an adverse employment action; and

6    (3) a causal link existed between the protected activity and the

7    employer's adverse action.  <u>See</u> <u>Miller v. Department of</u>

8    <u>Corrections</u>, 36 Cal. 4th 446, 472 (2005).  As previously stated,

9    it is undisputed that Plaintiff suffered an adverse employment

10   action when she was terminated.  Defendant disputes that

11   Plaintiff engaged in a protected activity, and the existence of a

12   causal link between the protected activity and the employer's

13   adverse action.

14       Plaintiff raises a triable issue that she engaged in a

15   protected activity.  Requesting maternity leave pursuant to the

16   CFRA is a protected activity.  <u>See</u> <u>Dudley v. Dep't of Transp.</u>,

17   90  Cal. App. 4th 255 (Cal. Ct. App. 2001).  Although Plaintiff

18   never filed the paperwork necessary to request maternity leave,

19   FEHA protects employees from preemptive retaliation by employers.

20   <u>Steele v. Youthful Offender Parole Bd.</u>, 162 Cal. App. 4th 1241,

21   1255 (Cal. Ct. App. 2008).  As a result, when Plaintiff notified

22   Defendant of her intention to take maternity leave, she engaged

23   in a protected activity supporting a claim of retaliation

24   pursuant to FEHA.

25   ///

26   ///

27   ///

28   ///

11

1      Plaintiff also offers sufficient evidence of a causal
2  connection between the protected activity and her eventual
3  termination.  Relative temporal proximity between the protected
4  activity and an adverse employment action can be sufficient to
5  establish a causal connection.  <u>Loggins v. Kaiser Permanente</u>
6  <u>Intern.</u>, 151 Cal. App. 4th 1102, 1110 (Cal. Ct. App. 2007).
7  Plaintiff notified Defendant of her intention to take maternity
8  leave in late 2007 or early 2008.  (Pl.'s Dep. 175:17-176:18.)
9  Her work assignment and schedule was subsequently altered in
10  March 2008, and she was terminated in May 2008.  (<u>Id.</u> 65:14-21.)
11  During that time period, Plaintiff claims that her managers
12  became less friendly towards her, and that one manager stated to
13  her that most people did not return from maternity leave.  (<u>Id.</u>
14  153:20-154:11.)  Plaintiff was a well-regarded employee with a
15  consistent work assignment and schedule for several years before
16  her pregnancy.  (<u>See</u> <u>Id.</u> 51:13-53:3.)  Within a few months of
17  notifying Defendant of her pregnancy and intention to take
18  maternity leave, her schedule and work assignments were changed
19  and she was eventually terminated.  The relatively short period
20  of time between the protected activity and the adverse employment
21  action, in conjunction with the change in treatment Plaintiff
22  allegedly suffered, raises an inference of causation sufficient
23  to survive summary judgment.
24  ///
25  ///
26  ///
27  ///
28  ///

12

1        **D.    Wrongful Termination**

2

3        A wrongful termination cause of action may be brought

4   against an at-will employer for public policy reasons if the

5   discharged employee can demonstrate that they were terminated for

6   reporting a statutory violation that served the public's benefit.

7   Green v. Ralee Engineering Co., 19 Cal. 4th 66, 76 (Cal. 1998).

8   The policy must be "public in that it affects society at large,

9   rather than the individual, must have been articulated at the

10  time of discharge, and must be fundamental and substantial." Id.

11  (internal citations omitted).

12       Violations of statutorily-authorized regulations can be used

13  as evidence of a public policy violation.  Id. at 80.  Further,

14  violations of FEHA's prohibition on sex discrimination have been

15  held to constitute a fundamental public policy supporting a claim

16  for wrongful termination.  See Stevenson v. Superior Ct.,

17  16 Cal. 4th 880, 901 (Cal. 1997).  A wrongful termination claim

18  based on a violation of FEHA is coextensive with the FEHA

19  violation.  See Jennings v. Marralle, 8 Cal. 4th 121, 135-136

20  (Cal. 1994).  Because Plaintiff has stated sufficient evidence of

21  a FEHA violation to survive summary judgment, summary

22  adjudication of Plaintiff's claim for wrongful termination is

23  similarly improper at this time.[7]

24

25       [7] Plaintiff also relies on the California Constitution's
    prohibition on sex discrimination for a fundamental public policy
26  supporting a claim for wrongful discharge.  See Cal. Const. art.
    I, § 8.  Because Plaintiff has submitted sufficient evidence of a
27  FEHA violation supporting a wrongful termination claim, it is
    unnecessary to consider the merits of the Constitutional claim at
28  this time.

1       **E.    Defamation**

2

3           Defamation is an intentional publication of a statement of

4       fact which is false, unprivileged, and has a natural tendency to

5       injure or which causes special damage.  <u>Ringler Ass. Inc. v.</u>

6       <u>Maryland Cas. Co.</u>, 80 Cal. App. 4th 1165, 1179 (Cal. Ct. App.

7       2000).  Plaintiff's claim of defamation is based on statements

8       made between Defendant's employees to the effect that she was

9       terminated for dishonesty.  (Pl. Dep. 226:24-230:11).  Defendant

10      does not deny that such statements were made, but contends that

11      the statements were undisputedly true.  Although truth is an

12      absolute defense to a defamation action, the truth of Defendant's

13      statements as to Plaintiff's dishonesty is disputed.  <u>See</u> <u>Smith</u>

14      <u>v. Maldonado</u>, 72 Cal. App. 4th 637, 648 (Cal. Ct. App. 1999).

15      There is a triable issue of fact as to whether Plaintiff was

16      dishonest or was terminated as a result of her pregnancy.

17      Therefore Defendant's contention that truth is a defense to

18      Plaintiff's defamation claim has no merit at this juncture.

19          Defendant also contends that the alleged statements were

20      privileged.  A statement is subject to a qualified privilege if

21      it is made innocently between interested parties without malice.

22      Cal. Civ. Code § 47(c).  Malice is defined as a lack of good

23      faith belief in the truth of the statement, or "a state of mind

24      arising from hatred or ill will, evidencing a willingness to vex,

25      annoy or injure another person."  <u>Lundquist v. Reusser</u>,

26      7 Cal. 4th 1193, 1204, 1213 (Cal. 1994) (internal citations

27      omitted).  A genuine issue of fact remains regarding Defendant's

28      alleged discriminatory motive in terminating Plaintiff.

If Defendant did in fact terminate Plaintiff because of her pregnancy and intention to take maternity leave, the subject statements were not made innocently or without malice.  As a result, summary judgment of the defamation claim is improper at this time.

**CONCLUSION**

Based on the foregoing, Defendant's Motion for Summary Judgment, or in the Alternative, Summary Adjudication (ECF No. 14) is DENIED as to all claims.

IT IS SO ORDERED.

Dated: March 7, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

15